1    STEPHANIE M. HINDS (CABN 154284)
     United States Attorney
2    MICHELLE LO (NYRN 4325163)
     Chief, Civil Division
3    DAVID M. DEVITO (CABN 243695)
     Assistant United States Attorney
4    450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102-3495
5    Telephone: (415) 436-7332
     FAX: (415) 436-6748
6    david.devito@usdoj.gov

7    TODD KIM
     Assistant Attorney General
8    Environmental and Natural Resources Division
     United States Department of Justice
9
     MATTHEW P. RAND (NYBN 4937157)
10   Trial Attorney
     Natural Resources Section
11   Environmental and Natural Resources Division
     United States Department of Justice
12   150 M St. NE, Room 3.128
     Washington, D.C. 20002
13   Telephone: (202) 305-0874
     FAX: (202) 305-0506
14   matthew.rand@usdoj.gov

15   Attorneys for Defendants

16                    UNITED STATES DISTRICT COURT

17                  NORTHERN DISTRICT OF CALIFORNIA

18                          OAKLAND DIVISION

19
     JACK GESCHEIDT, et al.,             )   Case No. 4:21-cv-4734-HSG
20                                       )
                                         )   **DEFENDANTS' REPLY IN SUPPORT OF**
21           Plaintiffs,                 )   **CROSS-MOTION FOR SUMMARY**
                                         )   **JUDGMENT**
22       v.                              )
                                         )   Date: February 24, 2022
23                                       )   Time: 2:00 p.m.
     DEB HAALAND, Secretary of the Interior, )   Place:  Courtroom 2, 4th Floor
24   et al.,                             )
                                         )   Hon. Haywood S. Gilliam, Jr.
25           Defendants.                 )
                                         )
26   _____)

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ..................................................................................................... 1

II.     ARGUMENT ............................................................................................................. 2

        A.      Plaintiffs Lack Standing................................................................................ 2

                1.      Plaintiffs Fail to Demonstrate Injury-in-Fact.................................... 2

                2.      Plaintiffs Cannot Establish a Causal Relationship Between Their
                        Alleged Injury and NPS's Alleged Failure to Revise the GMP for
                        Tomales Point ..................................................................................... 3

                3.      Plaintiffs Fail to Show that a Revised GMP Is Likely to Redress Their
                        Alleged Injury ..................................................................................... 6

        B.      Plaintiffs' Claim Fails Because 54 U.S.C. § 100502 Does Not Impose a
                Mandatory, Non-Discretionary Duty that Is Enforceable under the APA ......... 7

        C.      Plaintiffs Fail to Demonstrate NPS Has Unreasonably Delayed Revising the
                GMP ............................................................................................................. 10

        D.      Plaintiffs Have Not Shown They Are Entitled to any Relief Beyond the Steps
                the Park Is Already Taking ............................................................................ 12

                1.      NPS's Anticipated Timeframe for Revising the GMP Is Reasonable,
                        and Plaintiffs Fail to Demonstrate Otherwise .................................. 13

                2.      No Basis Exists for Providing Plaintiffs Yet Another Opportunity to
                        Brief the Propriety of Ordering the Park to Provide Supplemental Food
                        or Water ............................................................................................ 14

III.    CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Audubon Soc'y of Portland v. Jewell*,
  104 F. Supp. 3d 1099 (D. Or. 2015) ............................................... 13

*Bonnichsen v. United States*,
  367 F.3d 864 (9th Cir. 2004) ........................................................ 6

*Bresgal v. Brock*,
  843 F.2d 1163 (9th Cir. 1987) ...................................................... 12

*California v. Azar*,
  911 F.3d 558 (9th Cir. 2018) ........................................................ 2

*Ctr. for Biological Diversity v. Bureau of Land Mgmt.*,
  35 F. Supp. 3d 1137 (N.D. Cal. 2014) .......................................... 14

*Club v. McCarthy*,
  No. 15-CV-1165 (HSG), 2016 WL 1055120 (N.D. Cal. Mar. 15, 2016) ......................................... 14

*Dolan v. U.S. Postal Serv.*,
  546 U.S. 481 (2006) .................................................................... 8

*In re A Cmty. Voice*,
  878 F.3d 779, 781 (9th Cir. 2017) ............................................... 14

*In re Int'l Chem. Workers Union*,
  958 F.2d 1144 (D.C. Cir. 1992) (per curiam) .............................. 14

*In re Nat. Res. Def. Council, Inc.*,
  956 F.3d 1134, 1136 (9th Cir. 2020) ........................................... 14

*In re Pesticide Action Network*,
  798 F.3d 809, 811-12 (9th Cir. 2015) .......................................... 14

*In re Public Employees for Environmental Responsibility*,
  957 F.3d 267 (D.C. Cir. 2020) ..................................................... 9

*Jackson Hole Conservation All. v. Babbitt*,
  96 F. Supp. 2d 1288 (D. Wyo. 2000) ........................................ 2, 3

*Kifafi v. Hilton Hotels Ret. Plan*,
  701 F.3d 718 (D.C. Cir. 2012) ..................................................... 12

*Luciano Farms, LLC v. United States*,
  No. 2:13-02116-KJM-AC, 2014 WL 1912356 (E.D. Cal. May 13, 2014) ...................................... 10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................... 2

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
  336 F.3d 1094 (D.C. Cir. 2003) ................................................... 10

*Natural Resources Defense Council v. Southwest Marine, Inc.*,
   236 F.3d 985 (9th Cir. 2000) ............................................................................. 14

*Norton v. S. Utah Wilderness Alliance*,
   542 U.S. 55 (2004) ................................................................................... *passim*

*ONRC Action v. Bureau of Land Mgmt.*,
   150 F.3d 1132 (9th Cir. 1998) .......................................................................... 10

*Public Citizen Health Research Group v. Auchter*,
   702 F.2d 1159 (D.C. Cir. 1983) (per curiam) ................................................... 14

*S.F. BayKeeper v. Whitman*,
   297 F.3d 877 (9th Cir. 2002) .............................................................................. 8

*Salmon Spawning & Recovery All. v. Gutierrez*,
   545 F.3d 1220 (9th Cir. 2008) ............................................................................ 7

*Sierra Forest Legacy v. Sherman*,
   646 F.3d 1161 (9th Cir. 2011) (per curiam) .................................................... 15

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................................. 6

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ....................................................................................... 3, 4

*Wash. Env't Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) ............................................................................ 3

*WildEarth Guardians v. Chao*,
   454 F. Supp. 3d 944 (D. Mont. 2020) .......................................................... 10, 12

*WildEarth Guardians v. U.S. E.P.A.*,
   759 F.3d 1064 (9th Cir. 2014) ............................................................................ 6

*Wilderness Soc'y v. Rey*,
   622 F.3d 1251 (9th Cir. 2010) ............................................................................ 3

**Statutes**

5 U.S.C. § 555 ......................................................................................................... 9

5 U.S.C. § 706 ................................................................................................. 7, 8, 12

49 U.S.C. § 40128 ................................................................................................... 9

54 U.S.C. § 100502 ...................................................................................... *passim*

**Regulations**

40 C.F.R. § 1501.9 ................................................................................................ 13

40 C.F.R. § 1501.10 .............................................................................................. 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

40 C.F.R. § 1502.9 ......................................................................................................... 13

40 C.F.R. § 1505.2 ......................................................................................................... 13

40 C.F.R. § 1506.6 ......................................................................................................... 13

40 C.F.R. § 1506.11 ....................................................................................................... 13

85 Fed. Reg. 43304, 43325-26 ....................................................................................... 13

I.      INTRODUCTION

In their opening brief, Defendants[1] explained the several independent reasons why their cross-motion for summary judgment should be granted and Plaintiffs' motion denied: (a) Plaintiffs lack standing because the statute they seek to enforce, 54 U.S.C. § 100502, does not accord them procedural rights and they cannot bring suit merely claiming NPS has failed to obey the law; and they fail to show a causal connection between their alleged injury and the lack of a revised GMP, since that injury, as Plaintiffs frame it, relates directly to the 1998 Elk Plan, which the complaint does not challenge, and which an order requiring a GMP revision accordingly would not redress; (b) 54 U.S.C. § 100502 does not impose a present, non-discretionary duty on NPS to revise the GMP, and so cannot be judicially enforced through the APA; and (c) Plaintiffs fail to show that NPS has unreasonably delayed revising the GMP. Plaintiffs' opposition ignores the on-point authority holding that 54 U.S.C. § 100502 affords no procedural rights; fails to explain how a GMP revision could address the implementation-level elk management issues at the core of their complaint; refuses to grapple with the Supreme Court's reasoning in *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004); and offers no factual support for finding that NPS acted unreasonably by not revising the GMP for Tomales Point, given the continuing validity of the general management objectives.

Defendants also explained that even if the Court were to find unreasonable delay, Plaintiffs' remedy must be limited to an order requiring NPS to undertake a GMP revision, which NPS has already begun as part of a larger process, and for which it has committed to a reasonable schedule. Plaintiffs offer no authority for a broader remedy, nor any reason to deviate from NPS's proposed schedule. Finally, Plaintiffs' request to defer briefing on "additional remedial measures" until after the Court decides summary judgment ignores that Defendants have affirmatively requested judgment on this claim, which Plaintiffs inexplicably fail to oppose on the merits, confirming the absence of legal authority for their request.

---

[1] Capitalized terms not defined herein are given the meaning accorded to them in Defendants' Cross-Motion for Summary Judgment, ECF No. 57 ("NPS Br.").

1    **II.    ARGUMENT**

2        **A.    Plaintiffs Lack Standing**

3            **1.    Plaintiffs Fail to Demonstrate Injury-in-Fact**

4        "To establish an injury-in-fact, a plaintiff challenging the violation of a procedural right must

5    demonstrate (1) that he has a procedural right that, if exercised, could have protected his concrete

6    interests, (2) that the procedures in question are designed to protect those concrete interests, and (3) that

7    the challenged action's threat to the plaintiff's concrete interests is reasonably probable." *California v.*

8    *Azar*, 911 F.3d 558, 570 (9th Cir. 2018) (citation omitted).

9        Plaintiffs confirm their claim challenges the violation of a procedural right. Pl. Opp. at 10

10   ("Plaintiffs here are complaining about a procedural violation."). Analogizing themselves to the

11   plaintiffs in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), Plaintiffs contend they satisfy the

12   injury-in-fact requirement because they "all live near and routinely recreate in Tomales Point." Pl. Opp.

13   at 4. The *Lujan* plaintiffs, however, were asserting claims under NEPA, which confers procedural rights

14   upon interested members of the public, and thus were able to show that the law they sought to enforce

15   "accorded a procedural right to protect [their] concrete interests." 504 U.S. at 572 n.7. Here, in contrast,

16   Plaintiffs' only claim seeks to compel NPS to revise the GMP under 54 U.S.C. § 100502. Accordingly,

17   Plaintiffs have standing "only if that statute provides them with a procedural right whose transgression

18   constitutes an Article III injury in fact." *Jackson Hole Conservation All. v. Babbitt*, 96 F. Supp. 2d 1288,

19   1295 (D. Wyo. 2000) (citation omitted). Plaintiffs cannot show that 54 U.S.C. § 100502 confers such a

20   right.

21       In the only case addressing this issue, the district court in *Jackson Hole* held that § 100502 "does

22   not accord procedural rights to interested members of the public, nor can its purported violation by NPS

23   provide a basis for standing." *Id.* The court explained:

24       Most notably, in contrast to NEPA, [54 U.S.C. § 100502] does not provide any
         opportunity for public participation or comment in the general management plan planning
25       process. Petitioners' grievance, then, is not that NPS impermissibly forestalled their
         exercise of a procedural right, but rather, is that NPS failed to obey the law. The law is
26       abundantly clear, however, that "the mere allegation that [a federal agency is] acting
         without authority or in violation of the law is insufficient to establish standing."
27

28

1   *Id.* (quoting *Utah v. Babbitt*, 137 F.3d 1193, 1205 (10th Cir. 1998)).

2        Plaintiffs' only response to this analysis is to summarily dismiss *Jackson Hole* as "a single

3   Wyoming district court decision." Pl. Opp. at 4. Plaintiffs cite no contrary authority, nor offer any

4   critique of the court's reasoning. The decision, however, is directly on point and embodies controlling

5   precedent on standing. Unable to show the statute they seek to enforce accords them procedural rights,

6   Plaintiffs thus seek "to vindicate the public's nonconcrete interest in the proper administration of the

7   laws." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) (citation and quotation marks omitted).

8   Plaintiffs lack standing to do so. *Id.*; *Wilderness Soc'y v. Rey*, 622 F.3d 1251, 1260 (9th Cir. 2010)

9   ("procedural injury, standing on its own, cannot serve as an injury-in-fact").

10      **2.**    **Plaintiffs Cannot Establish a Causal Relationship Between Their Alleged
   Injury and NPS's Alleged Failure to Revise the GMP for Tomales Point**

11

12       To establish the causation element of standing, Plaintiffs "must show that a causal connection

13  exists between their asserted injuries and the conduct complained of." *Wash. Env't Council v. Bellon*,

14  732 F.3d 1131, 1142 (9th Cir. 2013). Here, that requires Plaintiffs to connect their alleged injury to the

15  GMP revision they contend has been unreasonably delayed. Plaintiffs' efforts to establish that

16  connection fail. Indeed, Plaintiffs' arguments expose the lack of such a connection, and instead confirm

17  that (as Defendants previously showed) Plaintiffs' alleged injury derives not from the GMP, but from

18  the 1998 Elk Plan, which Plaintiffs concede they have no right to challenge.

19       Plaintiffs insist that "the current GMP is not what is causing Plaintiffs' injuries," yet at the same

20  time assert that "it is the NPS's failure to revise that GMP that is causing Plaintiffs' injuries." Pl. Opp.

21  at 7. Plaintiffs identify the injury at issue as "the elk . . . continuing to die of starvation and dehydration

22  due to a lack of humane management," which they contend, without explanation or citation, is occurring

23  "because of the agency's failure . . . to revisit and amend their management." *Id.*

24       By expressly disclaiming any harm flowing from the currently operative GMP, Plaintiffs

25  undercut any connection between their alleged injury and the lack of a revised GMP. Despite Plaintiffs'

26  insistence to the contrary, the operative GMP and any need for a revision are inextricably intertwined—a

27  revised GMP can only be necessary (and a failure to revise "unreasonable") if the current GMP is

28

legally inadequate. In other words, the GMP cannot need revision purely for revision's sake.[2] Thus, the causation element of standing requires Plaintiffs to establish that there is something wrong with the current GMP, which a revised GMP could address, and thereby remedy Plaintiffs' injury. Here, Plaintiffs' theory falters, as they do not identify any aspect of the GMP requiring revision, much less explain how a revision of that document could forestall the harms of which they complain.

Plaintiffs' effort to connect the GMP to their alleged injury consists of reference to a single sentence in the GMP stating that "[r]estoration of historic natural conditions (such as reestablishment of Tule elk) will continue to be implemented when such actions will not seriously diminish scenic and recreational values." *Id.* (citing AR 000313). Plaintiffs do not say what about this statement needs revision or why. Nevertheless, Plaintiffs immediately leap from this snippet to the conclusion that "[t]herefore, a revision of that Plan would necessarily include measures that ensure that this protected wildlife does not continue to die of starvation and dehydration." *Id.* Plaintiffs offer no support for this conclusion and do not connect their alleged injury to any alleged problem in the current GMP.

GMPs are programmatic documents providing "broad direction for park management." AR009761. With respect to Tomales Point, Congress designated most of the land as wilderness. Consistent with a separate Congressional directive, Tomales Point was selected as the site for reintroduction of the Tule elk. AR003914-003918. Another main feature of the Reserve is the historic Pierce Point Ranch. AR000310. In light of the specific resources present, the GMP established the requisite "broad direction" for Tomales Point, setting out desired conditions and general objectives for, among other things, the Congressionally designated wilderness, the historic ranch house and landscape, and the elk herd. Owing to its broad, programmatic nature, the GMP set these objectives in general terms. With respect to Tule elk, the GMP does so in the single sentence referenced above, providing that "[r]estoration of historic natural conditions (such as reestablishment of Tule elk) will continue to be implemented." AR000313. Notably, Plaintiffs do not claim that this pronouncement was insufficient to

---

[2] Regardless of how much time elapsed, failure to revise an otherwise adequate GMP could not be deemed "unreasonable" under the APA. Moreover, no party would have standing to bring such a claim challenging the violation of "a procedural right *in vacuo.*" *Summers*, 555 U.S. at 496.

1   meet the requirements of 54 U.S.C. § 100502. Nor do they identify any change in the conditions at

2   Tomales Point that would require revisiting the stated objectives. Those general objectives—

3   "[r]estoration of historic natural conditions" and "reestablishment of Tule elk"—remain valid and

4   unchanged, and Plaintiffs do not contend otherwise.

5           As Defendants showed in their opening brief, and as Plaintiffs' opposition makes abundantly

6   clear, Plaintiffs allege injury stemming from implementation-level elk management. Plaintiffs fault

7   NPS's alleged "failure to revise its management of this wildlife," which they assert has resulted in elk

8   dying "because they cannot get . . . south of the . . . fence." Pl. Opp.. at 1. Plaintiffs claim this "wildlife

9   suffering . . . could be alleviated by a change in their [i.e., the elk's] management, including, for

10  example, removal or relocation of the fence that confines them." *Id.* at 2; *see also, e.g., id.* at 7, 14, 16.

11  Through these characterizations, in their own words, Plaintiffs connect their complaints directly to the

12  1998 Elk Plan, rather than the GMP, thus confirming the absence of a causal connection to the latter.

13          Indeed, the record conclusively shows that the management document controlling these

14  implementation-level elk management issues is the 1998 Elk Plan, not the GMP. The 1998 Elk Plan

15  states that NPS "will maintain the elk fence on Tomales Point and continue to separate tule elk from

16  cattle." AR 003680. It reiterates that NPS "intends to manage the tule elk population over time with as

17  little population manipulation as possible." *Id.* And it discusses and rejects the concept of supplemental

18  forage, specifying that "[n]o effort will be made to cultivate food crops specifically to improve the

19  range's ability to support elk. Such strategies are known to be self-defeating as artificially provided food

20  leads to ever-increasing herd sizes that overwhelm the ability of the range to support them." *Id.*

21          By tying their complaints directly to NPS's elk management practices, and particularly to the

22  continued maintenance of the Tomales Point fence—which Plaintiffs repeatedly cite as the source of

23  their injury—Plaintiffs confirm the relationship between their alleged injury and the 1998 Elk Plan, and

24  likewise the absence of a causal connection to the GMP. Plaintiffs fail to explain how a standalone

25  revision to the GMP, which constitutes the only relief available on Plaintiffs' sole cause of action, would

26  alter the elk management approach set by the 1998 Elk Plan or its directive to maintain the fence.

27

28

To the extent Plaintiffs argue to the contrary by asserting that "NPS now tells the Court that it in fact will incorporate specific elk management measures and objectives in the revised GMP that it will voluntarily prepare," Pl. Opp. at 8, Plaintiffs misread NPS's statement. Superintendent Kenkel's declaration explains that the contemplated new management plan "will include resource-specific and site-specific analyses to address wilderness and elk herd management and decisions that can be implemented when the plan is final." Kenkel Decl., ECF No. 57-1, ¶ 2. The next sentence (which Plaintiffs ignore) makes clear that this part of the new plan addressing elk management "*would replace the 1998 Tule Elk Management Plan.*" *Id.* (emphasis added). Until a new plan is finalized, the 1998 Elk Plan remains in effect and continues to guide the elk management practices that are the target of Plaintiffs' complaints. Because Plaintiffs cannot establish a causal connection between their alleged injury and the allegedly withheld revision to the GMP, they lack standing on their sole cause of action.

### 3. Plaintiffs Fail to Show that a Revised GMP Is Likely to Redress Their Alleged Injury

To establish redressability, a plaintiff must show that it is likely, even if not necessarily certain, that his injury can be redressed by a favorable decision. *See Bonnichsen v. United States*, 367 F.3d 864, 873 (9th Cir. 2004). However, relief "that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

Plaintiffs argue that to establish redressability "they need not prove that the revised GMP . . . would in fact accomplish this objective" of "protecting the Tule elk from continuing to die of starvation and dehydration." Pl. Opp. at 11. This argument misses the point. Plaintiffs still must show that "it is likely, as opposed to merely speculative, that a favorable decision will redress [their] injuries." *WildEarth Guardians v. U.S. E.P.A.*, 759 F.3d 1064, 1071 (9th Cir. 2014) (citation omitted). Here, because Plaintiffs' alleged injury derives from the 1998 Elk Plan and not the GMP (or the absence of a revision thereto), Plaintiffs cannot show that a ruling in their favor would likely provide redress. Plaintiffs fail to show how a new GMP would remedy the implementation-level elk management issues they complain about, which are addressed in the 1998 Elk Plan that Plaintiffs concede they cannot challenge. This renders Plaintiffs' theory of redressability beyond speculative—the relief they seek (an

order compelling NPS to revise only the GMP) simply cannot not remedy their alleged injury. *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226-27 (9th Cir. 2008) (procedural injury insufficient to confer standing where the underlying concrete injury would happen irrespective of any decision an agency may make on remand). And while NPS has begun to undertake to revise the 1998 Elk Plan as a matter of agency discretion, such relief unquestionably lies beyond the reach of Plaintiffs' sole cause of action.

### B. Plaintiffs' Claim Fails Because 54 U.S.C. § 100502 Does Not Impose a Mandatory, Non-Discretionary Duty that Is Enforceable under the APA

As Defendants explained in their cross-motion, NPS Br. at 12-15, the Supreme Court's *SUWA* decision instructs that in analyzing an unreasonable delay case brought under § 706(1) of the APA, the court must first address the predicate question of whether the action sought to be compelled involves "a ministerial or non-discretionary act." 542 U.S. at 64. This limitation on § 706(1) of the APA "carried forward the traditional practice prior to its passage, when judicial review was achieved through use of the so-called prerogative writs," which were "limited to enforcement of 'a specific, unequivocal command,' the ordering of a 'precise, definite act . . . about which [an official] had no discretion whatever.'" *Id.* (citations omitted). The key to determining whether a claim involves "*discrete* agency action that it is *required to take*," *id.* at 64, lies in whether the law at issue—here, 54 U.S.C. § 100502— confers discretion on the agency. If it does, action cannot be compelled under the APA because the conferral of such discretion means the law lacks "the clarity necessary to support judicial action under 706(1)." *SUWA*, 542 U.S. at 66. That is so even if a statute is "mandatory as to the object to be achieved, but . . . leaves [the agency] a great deal of discretion in deciding how to achieve it." *Id.* Defendants further explained how 54 U.S.C. § 100502 confers such discretion on NPS with respect to the revision of park unit general management plans. *See* NPS Br. at 13.

Rather than address the specific language of *SUWA* and its application to the statute at issue, Plaintiffs evade the topic with the strawman argument that *SUWA* "did not rule" that "the *only* kind of mandatory duty that would suffice" was "a statutory command accompanied by a particular deadline." Pl. Opp. at 12. What the Supreme Court did hold is that to be judicially enforceable the obligation must

be "ministerial or non-discretionary." *SUWA*, 542 U.S. at 64. Plaintiffs do not dispute that the statute's use of the phrase "in a timely manner" gives NPS discretion to decide when to revise a GMP. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute."). Embodied in that conferral of discretion is the flexibility to examine more than just the amount of time that has passed since the last plan was issued. NPS manages hundreds of park units throughout the country, all with differing general planning needs. The statute recognizes that what "timely" means can be very different from one park to another. It does not say when NPS must revise a GMP, nor can Plaintiffs.

Moreover, the meaning of "in a timely manner" is context-specific to this statute, which addresses the particularly long-term subject of park general management planning. Viewed in context, the meaning of "timely" in this statute is very different than it would be in a different statute addressing a more urgent, shorter-term subject. The point—which Plaintiffs fail to rebut—is that the phrase confers "a great deal of discretion in deciding how to achieve" the statute's object. *SUWA*, 542 U.S. at 66.[3]

Plaintiffs' argument that, where a law does specify a definite timeframe, this feature merely "informs the analysis of whether an agency delay is 'unreasonable' within the meaning of Section 706(1)," Pl. Opp. at 12, puts the cart before the horse. The Court cannot reach whether action has been unreasonably delayed until first determining that the action is susceptible to compulsion under the APA. *See S.F. BayKeeper v. Whitman*, 297 F.3d 877, 885-86 (9th Cir. 2002) ("[F]or a claim of unreasonable delay to survive, the agency must have a statutory duty in the first place."). Where the agency "does not presently have a statutory duty to act," "there can be no unreasonable delay." *Id.* at 886 (rejecting argument that "an agency action may be unreasonably delayed even when the governing statute does not require action by a certain date"). Here, because the statute leaves the timing of a plan revision to the

---

[3] Plaintiffs' cite to a particular dictionary definition of "timely" does nothing to limit this discretion. Plaintiffs cherry-pick one of several definitions, arguing that "timely" should be interpreted to mean "quickly, rapidly; without delay, promptly." Pl. Opp. at 13. Plaintiffs ignore three other definitions in the very same entry, which affirm the inherently subjective nature of the word "timely": "[s]ufficiently early, in good time," "[a]t a fitting, suitable, or favourable time; in a well-timed manner; opportunely," or "[a]t the proper or natural time; not prematurely." Oxford English Dictionary, 3d ed. March 2012 (available at: http://www.oed.com/view/Entry/202121?rskey=s5rs89&result=2#eid, last visited on January 19, 2022).

agency's discretion, Plaintiffs cannot establish that NPS is presently under a nondiscretionary duty to act. The *TRAC* factors thus do not come into play.

Consistent with their mis-framing of the issue, the cases Plaintiffs cite are readily distinguished. All but one of the cases Plaintiffs cite on this point, *see* Pl. Opp. at 12, expressly involved 5 U.S.C. § 555(b), which does not apply here (and did not apply in *SUWA*). As Defendants' opening brief explains, that section of the APA requires "each agency to conclude a matter presented to it" "within a reasonable time." *See* NPS Br. at 14. Unlike the plaintiffs in the cases they cite, Plaintiffs have not petitioned NPS to do anything, and 5 U.S.C. § 555(b) and decisions based on it are therefore inapposite.

The one case Plaintiffs cite that does not expressly involve 5 U.S.C. § 555(b), *In re Public Employees for Environmental Responsibility*, 957 F.3d 267 (D.C. Cir. 2020), nevertheless undermines their argument. That case involved a mandamus petition filed to compel the FAA and NPS to issue rules governing sightseeing flights over national parks, where applications for such plans were "pending at twenty-five parks for nearly two decades." *Id.* at 269. Unlike 54 U.S.C. § 100502, the statute at issue in *Public Employees*—49 U.S.C. § 40128—imposed a duty to act within a certain time period: two years. 957 F.3d at 273 ("For nineteen years, the agencies have failed to comply with their statutory mandate despite Congress's command to 'make every effort' to do so within two years of an application."). Thus, the D.C. Circuit held it was "the rare case in which mandamus relief is appropriate." *Id.* While the statute's two-year time limit was caveated by the obligation to "make every effort to act on any application" within this timeframe, and thus did not impose an absolute, "rigid schedule, it provide[d] a ruler against which the agencies' progress must be measured." *Id.* at 274. Here, in contrast, the GMP statute neither specifies a time limit nor provides any guideline for measuring agency progress. Translated into the language of *SUWA*, 49 U.S.C. § 40128 did not leave "a great deal of discretion in deciding how to achieve" its object, 542 U.S. at 66, while 54 U.S.C. § 100502 does exactly that.

Plaintiffs' attempt to categorically distinguish the cases cited in Defendants' cross-motion, *see* NPS Br. at 13, on the grounds that they involved discretion conferred regarding whether the agency had a duty to act, as opposed to when, raises a distinction without a difference, finding no support in *SUWA*'s reasoning. "The cases where courts have entered an injunction remedying an agency's failure

to act . . . generally present challenges to an agency's failure to comply with an absolute, non-discretionary duty that involves a time limit of the type posed in the hypothetical in *SUWA*." *WildEarth Guardians v. Chao*, 454 F. Supp. 3d 944, 944 (D. Mont. 2020) (citing *SUWA*, 542 U.S. at 65). *SUWA*'s discussion of agency discretion did not differentiate between laws giving agencies discretion whether to act, and those conferring discretion only as to timing. Its reasoning expressly covered both situations, noting, for example, that the mandamus-derived limitations on the APA protect against judicial oversight "over the manner *and pace* of agency compliance with such congressional directives," which "is not contemplated by the APA." *Id.* at 67 (emphasis added). Like the laws at issue in *ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1139 (9th Cir. 1998) and *Luciano Farms, LLC v. United States*, No. 2:13-02116-KJM-AC, 2014 WL 1912356, at *4 (E.D. Cal. May 13, 2014), for example, where Congress imparted discretion by using the words "appropriate" and "as soon as practicable," respectively, it did so here with the phrase "in a timely manner." In short, Plaintiffs fail to rebut Defendants' arguments that §100502 does not mandate a discrete duty this Court may compel.

## C.     Plaintiffs Fail to Demonstrate NPS Has Unreasonably Delayed Revising the GMP

In arguing that NPS has unreasonably delayed revising the GMP as it relates to Tomales Point, Plaintiffs offer two basic lines of argument, both of which are unpersuasive. In one, they emphasize the "forty-one-year" delay, *see* Pl. Opp. at 14-15, as though by repeating the number of years that have elapsed they may convince the Court to deem that length of time *per se* unreasonable. Plaintiffs offer no support for a *per se* rule of any length. Likewise, their effort to distinguish cases finding shorter delays not unreasonable purely on the basis that those delays were significantly shorter than forty-one years, *see id.* at 15 (arguing that "[o]f course, a delay of forty-one years is significantly longer than . . . five or six"), lacks merit, as it improperly strips the necessary context from the analysis. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."). While the length of time is a relevant data point in the "rule of reason" analysis, standing alone, it informs very little about what is reasonable in a

particular case, especially where, as here, Congress has offered no guidance as to what it meant by the phrase "in a timely manner."

In their other line of argument, Plaintiffs point to factual issues relating specifically to NPS's management of the elk herd, which they contend show the unreasonableness of not revising the GMP. For example, Plaintiffs argue that "since 2013, hundreds of Tule elk have now died from a lack of sufficient water and forage because they cannot get past the NPS's three-mile-long fence." *See* Pl. Opp. at 15. Plaintiffs' unsupported assertions fail to explain why (or when) NPS should have revised the GMP. As discussed above in connection with the standing analysis, Plaintiffs' persistent focus on elk management issues (and the fence) reveal that their true grievances relate directly and exclusively to the 1998 Elk Plan, and not the GMP. Indeed, Plaintiffs make no secret of this, devoting several paragraphs to gratuitously criticizing NPS for allegedly "fail[ing] to implement many of the goals and specific measures outlined in the 1998 Elk Plan," and labeling it "completely outdated." Pl. Opp. at 16-17. It bears repeating, however, that Plaintiffs have no claim to compel NPS to revise the 1998 Elk Plan. Their only claim seeks to compel a revised GMP. As to that claim, Plaintiffs' criticisms of the 1998 Elk Plan are irrelevant, as they offer no insight into whether or why the GMP required revision.

As previously explained, NPS has not unreasonably delayed revising the GMP because the general conditions at Tomales Point have not changed in a way that warrants a revision of that document. *See* NPS Br. at 16-17. On this point, Plaintiffs misrepresent Defendants' argument, suggesting that the "conditions" at Tomales Point have changed by pointing to elk deaths that have occurred since 2013. Pl. Opp. at 15. However, Defendants' reference to the "conditions" at Tomales Point was to the "general conditions" relevant for general management planning purposes—namely the "designated wilderness," and "historic Pierce Point Ranch"—and the related management objectives, including "restoration of historic natural conditions (such as reestablishment of Tule elk)." NPS Br. at 16-17. Fluctuations in the elk population do not change those general conditions, or explain why the GMP, which contains no specifics about how to manage the elk population, needs revising.

In any event, NPS has now begun the process of revising, if appropriate, the GMP as part of a management plan for Tomales Point which is primarily designed to address wilderness and elk herd

management. Kenkel Decl. ¶¶ 2, 3. Contrary to Plaintiffs' suggestion, NPS's action is not in response to this lawsuit but based upon the severity and frequency of the two historic droughts that have occurred within the last eight years. *Id.* Given Plaintiffs' lack of any claim to compel a revision of the 1998 Elk Plan, NPS's decision to prepare a replacement for that document cannot be viewed as anything but purely voluntary. Irrespective of NPS's reasoning, the agency is now taking the action Plaintiffs claim was being unreasonably delayed. Under the "rule of reason" analysis, the fact that NPS has committed to revising the GMP is relevant to Court's analysis of the *TRAC* factors, and weighs in favor of finding that NPS has not unreasonably delayed revising the GMP. *See* NPS Br. at 18 n.9.

**D.    Plaintiffs Have Not Shown They Are Entitled to any Relief Beyond the Steps the Park Is Already Taking**

Should Plaintiffs prevail, their only remedy would be an order compelling NPS to revise the GMP. Ordering NPS to take any further actions—including requiring NPS to provide supplemental food and water, as Plaintiffs request—would be improper. Such additional actions would go beyond what is necessary to provide complete relief for Plaintiffs' sole cause of action. Plaintiffs assert no claim for which the appropriate remedy would be providing supplemental food and water, and such relief is outside of the narrow scope of a § 706(1) injunction, which must be limited to rectifying the agency's failure to comply with its non-discretionary duty. *See Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718, 733 (D.C. Cir. 2012); *Bresgal v. Brock*, 843 F.2d 1163, 1171 (9th Cir. 1987); *WildEarth Guardians*, 454 F. Supp. 3d at 955. Because NPS has already committed to developing a new management plan that will include revisions to the GMP if appropriate, there is no further relief to which Plaintiffs are entitled. Accordingly, should the Court find that Plaintiffs prevail on their sole claim, injunctive relief is unnecessary. However, should the Court decide to impose a timeframe, it should adopt the timeframe set forth by NPS, which is reasonable. *See* NPS Br. at 24-25.

In response, Plaintiffs oppose a mootness argument Defendants never made. Pl. Opp. at 17-21. Defendants merely contended that should Plaintiffs prevail—which, as explained above, they should not—an injunction is unnecessary as there is no further relief to which Plaintiffs are entitled. Plaintiffs have failed to establish otherwise, despite multiple opportunities to do so.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**1.     NPS's Anticipated Timeframe for Revising the GMP Is Reasonable, and Plaintiffs Fail to Demonstrate Otherwise**

The standard for "determining the appropriate timeline for agency action" is "reasonableness." *Audubon Soc'y of Portland v. Jewell*, 104 F. Supp. 3d 1099, 1102 (D. Or. 2015). NPS has proposed "an expedited schedule given the range of resource and management issues, as well as the unprecedented nature of the impacts arising from the recent droughts." Kenkel Decl. ¶ 5. Superintendent Kenkel's Declaration sets out the necessary tasks to complete a new management plan for Tomales Point, how the NPS will meet the requirements of NEPA—notice of intent, draft and final environmental impacts statements, record of decision, public comments, and agency consultation—and the how the schedule allows for appropriate levels of data and analysis and meaningful public participation. *Id.* at ¶ 5 a-c. Review of the substantive requirements for the notice of intent, environmental impacts statements, public and agency involvement (including time periods) and the required record of decision (*see*, *e.g.*, 40 C.F.R. §§ 1501.9(c), 1502.9, 1505.2, 1506.6, 1506.11) shows that NPS's schedule for the planning process is reasonable. If the Court imposes a schedule, it should adopt the one set forth by NPS.

Plaintiffs do not address the substance of NPS's proposed schedule except to baselessly assert that "[t]here is no justifiable reason why the agency should take" fifteen months before beginning the formal NEPA process. Pl. Opp. at 22. To the contrary, Superintendent Kenkel detailed the tasks needed to begin and complete—according the requirements of NEPA—the new management plan and the time needed. Moreover, the current version of the NEPA regulations, revised in part in an attempt to make the process more efficient and shorten the time needed, envisions that the "scoping" period prior to issuance of the formal notice of intent should be used to allow for adequate development of the notice of intent and draft environmental impact statement to ensure meaningful agency consideration as well as public and other agency review. *See* 85 Fed. Reg. 43304, 43325-26; 40 C.F.R. § 1501.9(a-c). These changes are also designed to allow agencies to comply with the two-year deadline to complete an EIS after issuance of the notice of intent. *See* 40 C.F.R. § 1501.10(b)(2).

After previously failing to propose any timeframe, Plaintiffs now attempt to counter NPS's well-reasoned schedule by arbitrarily demanding, for the first time, that the Court order NPS to revise the

GMP within one year. Pl. Opp. at 21. The only reason Plaintiffs give for this deadline is "the agency's continued refusal to provide any supplemental food for the elk." *Id.* Plaintiffs again offer no explanation for how revising the GMP would result in the elk receiving supplemental forage and their timeline incorrectly presumes that any "revision" would include a set of preordained items that the Court can simply order. Further, Plaintiffs discuss virtually none of Superintendent Kenkel's explanation for the proposed timeframe nor how NPS could reasonably complete all of the required actions within a year.

None of the cases cited by Plaintiffs support a different result. In three of them, the agencies refused for almost a decade to act on rulemaking petitions, repeatedly failing to live up to their own deadlines. *See In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1136 (9th Cir. 2020); *In re A Cmty. Voice*, 878 F.3d 779, 781 (9th Cir. 2017); *In re Pesticide Action Network*, 798 F.3d 809, 811-12 (9th Cir. 2015). Here, the record contains no such evidence that NPS refused to act on petitions or ignored its own deadlines. In two of the cases, the court adopted the agencies' deadlines over plaintiffs' proposals. *See In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1150 (D.C. Cir. 1992) (per curiam); *Ctr. for Biological Diversity v. Bureau of Land Mgmt.*, 35 F. Supp. 3d 1137, 1155 (N.D. Cal. 2014). In *Public Citizen Health Research Group v. Auchter*, the D.C. Circuit declined to "dictate [a] fixed date for issuance of a final rule." 702 F.2d 1159 (D.C. Cir. 1983) (per curiam). In *Club v. McCarthy*, the court adopted the plaintiffs' timeline for issuing a proposed rulemaking over the agency's longer proposal only after the plaintiffs pointed to examples of shorter timelines for other recently issued rules. No. 15-CV-1165 (HSG), 2016 WL 1055120, at *6 (N.D. Cal. Mar. 15, 2016). In fact, NPS's most recent revision to the GMP for the Park—the GMPA—took more than four years under a court supervised schedule. *See* AR000348, 354. Finally, *Natural Resources Defense Council v. Southwest Marine, Inc.*, is inapposite as it is not about determining the proper timeframe for agency action. 236 F.3d 985 (9th Cir. 2000).

### 2. No Basis Exists for Providing Plaintiffs Yet Another Opportunity to Brief the Propriety of Ordering the Park to Provide Supplemental Food or Water

Instead of responding to Defendants' request for summary judgment on their demand for an order compelling NPS to provide supplemental food and water, Plaintiffs ignore the merits and ask the Court to defer the issue until after it decides summary judgment. Plaintiffs request that if they prevail,

1  "the Court should allow [them] to seek additional injunctive relief to ensure that the Tule elk at Tomales

2  Point do not continue to die in large numbers from starvation and/or dehydration during the time it takes

3  the NPS to complete the GMP." Pl. Opp. at 23.

4       The Court should reject Plaintiffs' unfounded request. This requested relief is not new or

5  "additional." Plaintiffs have sought it since their motion for a preliminary injunction. *See* Proposed

6  Order, ECF No. 8-13; *see also* FAC 17. Even so, over the course of four briefs and an oral argument,

7  Plaintiffs have never identified any authority to support the injunction they seek. Despite Defendants'

8  cross-motion squarely raising the issue, Plaintiffs did not respond at all to Defendants' detailed

9  explanation of why Plaintiffs are only entitled, at most, to an order directing NPS to update the GMP.

10  NPS Br. at 21-23. Plaintiffs' last-minute request to submit yet another brief on this issue only highlights

11  the glaring lack of authority for such relief.

12       Plaintiffs base this request on their "concern" that interim measures are necessary to ensure that

13  the population does not continue to decline while NPS revises the GMP. Pl. Opp. at 24. Even if

14  Plaintiffs' concern was valid, they would still have to demonstrate legal entitlement to this relief, which

15  they have not and cannot.

16       The cases string-cited by Plaintiffs, *see* Pl. Opp. at 24-25, do not warrant a different result. In

17  each case, the injunctive relief ordered by the court was directly tied to the claims at issue. *See, e.g.*,

18  *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1168, 1184 (9th Cir. 2011) (per curiam) (holding that

19  the agency did not comply with NEPA when amending the Sierra Nevada Forest Plan and setting aside

20  the amendment while the agency redoes the NEPA analysis). Here, in contrast, Plaintiffs cannot show

21  that their requested relief (supplemental feeding) is related to the single claim set forth in the FAC (to

22  revise the GMP).

23  **III.  CONCLUSION**

24       For the foregoing reasons, Plaintiffs' motion for summary judgment should be denied and

25  Defendants' cross-motion granted. Alternatively, if the Court were to find any relief appropriate, the

26  only available remedy would be to order Defendants to complete the ongoing revision process by a

27  reasonable deadline.

28

1   DATED: January 19, 2022                    Respectfully submitted,

2                                              STEPHANIE M. HINDS
                                               United States Attorney
3

4                                               /s/ *David M. DeVito*
                                               DAVID M. DEVITO
5                                              Assistant United States Attorney

6                                              TODD KIM
                                               Assistant Attorney General
7                                              Environment & Natural Resources Division

8                                               /s/ *Matthew P. Rand*
                                               Matthew P. Rand
9                                              Trial Attorney

10                                             Attorneys for Defendants

11
              **ATTESTATION PURSUANT TO LOCAL CIVIL RULE 5-1(i)(3)**
12

13          I, David M. DeVito, attest that any signatories indicated by a conformed signature (/s/) within

14   this e-filed document have approved, and concur in, this filing. I declare under penalty of perjury under

15   the laws of the United States of America that the foregoing is true and correct.

16                                              /s/ *David M. DeVito*
                                               DAVID M. DEVITO
17

18

19

20

21

22

23

24

25

26

27

28

DEFS.' REPLY IN SUPPORT OF CROSS-MSJ
4:21-CV-4734 HSG                          16